**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WENDY WILLIAMS DUPONT and BOGALUSA REBRITH,** | **CIVIL ACTION NO. 24-2775** |
| **VERSUS** | **SECTION "A" (2)** |
| **MAYOR TYRIN Z. TRUONG, individually and in his official capacity as Mayor of the City of Bogalusa** | **JUDGE: JAY C. ZAINEY** |
| | **MAGISTRATE JUDGE: DONNA PHILLIPS CURRAULT** |

<u>**First Amended Complaint**</u>

**NOW INTO COURT**, though undersigned counsel, come Plaintiffs Wendy Williams Dupont and Bogalusa Rebirth to bring this suit against Bogalusa Mayor Tyrin Z. Truong, in his individual and official capacity, for violation of their rights under the First Amendment of the United States Constitution, retaliation, and related state law claims.

## I.    JURISDICTION & VENUE

1.    Jurisdiction in this Court is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 as the claims at issue arise out of 42 U.S.C. § 1983 et seq. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Defendant's actions occurred in the Eastern District of Louisiana, Plaintiffs and Defendant reside in the Eastern District of Louisiana and the damages to Plaintiffs occurred in the Eastern District of Louisiana.

## II.    PARTIES

3.    <u>Plaintiff Wendy Williams Dupont</u> is a person of the full age of majority residing in the Eastern District of Louisiana. Ms. Dupont is employed with Bogalusa Rebirth.

4.      Plaintiff Bogalusa Rebirth is a Louisiana 501(c)3 non-profit community development organization, HUD Certified Housing Counseling Agency, certified Community Housing Development Organization (CHDO) and USDA Loan Packager, doing work in the City of Bogalusa.

5.      Defendant Mayor Tyrin Z. Truong is a person of the full age of majority residing in the Eastern District of Louisiana. He is sued in his individual and official capacities. In his official capacity, Mayor Truong is the decision maker and highest authority as Mayor of the City of Bogalusa, Louisiana.[1]

6.      Mayor Truong is the chief policymaker for the City of Bogalusa regarding the issues described in this case.

### III.    FACTS

***Bogalusa Rebirth creates affordable homeownership opportunities for the Bogalusa community.***

7.      Bogalusa community leaders formed Bogalusa Rebirth in 2007 to address the issues of blight and poverty in Bogalusa.

8.      The organization is composed of an eight-member Board of Directors and two employees, an Executive Director and Homebuyer Coordinator.

9.      Through broad partnerships, HUD funding, local contributions and the commitment of working families, Bogalusa Rebirth replaces blight in Bogalusa neighborhoods with new houses to be sold to families earning less than 80% of median household income.

---

[1] "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted). Official-capacity suits are, therefore, "treated as a suit against the entity" itself. Id. at 166, *as cited in Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-656, 2018 WL 4517461, at *14 (M.D. La. Sept. 20, 2018). In other words, the City of Bogalusa itself is a defendant, as sued through the Mayor in his official capacity.

10.     Bogalusa Rebirth also offers financial literacy training, credit counseling and down payment assistance.

11.     Bogalusa Rebirth is further committed to local economic investment in Bogalusa by intentionally partnering with local businesses, from contractors to suppliers, to build the homes.

12.     In May 2025, the American Legion recognized Plaintiff Wendy Williams Dupont, the Executive Director of Bogalusa Rebirth, as its "2024-2025 Citizen of the Year," for her dedication to helping families secure safe, affordable housing.

13.     Under Ms. Dupont's leadership, Bogalusa Rebirth secured significant funding through grants and partnerships to rehabilitate blighted properties, build new homes, and assist first-time home buyers in navigating the path to homeownership.

### *Wendy Dupont expressed concerns to Defendant Truong regarding his conduct.*

14.     In 2022, Defendant Tyrin Z. Truong became Mayor of the City of Bogalusa.

15.     Around May 2023, pictures began circulating online of Bogalusa City workers performing work on a private residence.

16.     Plaintiff Wendy Williams Dupont, is a resident of Bogalusa, the Executive Director of Bogalusa Rebirth, and has over 15 years of non-profit, real estate, and housing construction experience.

17.     Ms. Dupont was concerned that Mayor Truong was unlawfully directing city employees to perform work on a private residence.

18.     After learning that the private residence in question belonged to Mayor Truong's mother, Ms. Dupont became even more concerned about the potential misuse of city workers and city funds.

19.     Ms. Dupont went to Mayor Truong's office to express her concerns to him directly before expressing them openly at a City Council meeting in June 2023.

20.     Shortly thereafter Mayor Truong ceased all communications with Ms. Dupont and blocked her and her husband online, including blocking them from viewing the official social media Facebook page, "Mayor Tyrin Z. Truong."[2]

***Mayor Truong continues to violate citizen's First Amendment Rights by prohibiting them from accessing posts on his public official page.***

21.     The "Mayor Tyrin Z. Truong" Facebook page is different from Mr. Truong's personal account, and the City of Bogalusa account.

22.     The page says "Official campaign page of Tyrin Z. Truong. For official city news, follow City of Bogalusa. Views expressed are my own."

23.     But despite that disclaimer, Mayor Truong uses the page for official business.

24.     He utilizes the "Mayor Tyrin Z. Truong" Facebook page to share pertinent official city business, including Public Service Announcements regarding road closures, potential fire station closures, issues with the sewer system, and other announcements that vital to a resident's public health and safety.

25.     For example, on July 20, 2025, he used the page to post an "Official Statement" from the "Office of the Mayor City of Bogalusa, Louisiana":

---

[2] Available online at https://www.facebook.com/tyrinformayor



26.     On August 1, 2025, he used the page to repost a City of Bogalusa "public service announcement."

27.     On October 17, 2025, he used the page to post a number of images with the City of Bogalusa official seal.

28.     On October 30, 2025, he used the page to post a "STATEMENT ON BEHALF OF MAYOR TYRIN TRUONG."

29.     On November 4, 2026, he used the page to post a "STATEMENT FROM MAYOR TYRIN Z. TRUONG."

30.     On December 1, 2025, he used the page to announce findings from the "State of the City 2025" using the City of Bogalusa seal.

31.     On December 5, 2025, he used the page to welcome "Fireman Bickham and Fireman Peters to the Bogalusa Fire Department!"

32.     On December 12, 2025, he used the page to "publicly call[] on Fiscal Administrator Robert Nielson to ensure that the Bogalusa Police Department is actively visible in our community."

33.     On December 12, 2025, he notified the public about the content of a Bogalusa City Council meeting.

34.     On December 19, 2025, he directed the public to "pay attention" to a Louisiana Legislative Auditor report and posted the findings and recommendations.

35.     On January 8, 2026, he posted a veto statement on City of Bogalusa letterhead and discussed his reasons for vetoing an ordinance.

36.     On January 11, 2026, he invited residents to "come pray with me tonight at 6 at the flag pole in front of City Hall."

37.     On January 14, 2026, he used the page to announce the "repaving of Memphis St." and discussed federal grants.

38.     Many of these important announcements only appear on the Mayor's page, and are not posted to the City of Bogalusa page.

39.     Upon information and belief, Defendant Truong has "blocked" hundreds of citizens from viewing this page, specifically because those citizens exercised their First Amendment rights to express concerns regarding Mayor Truong's leadership.

40.    To date, Ms. Dupont and her husband remain blocked from viewing this page, and Defendant Truong, who is still Mayor of Bogalusa, has been indicted on charges of malfeasance in office, public intimidation, and theft.

41.    Ms. Dupont has been working with the Bogalusa community to prepare a list of residents blocked from the Mayor's Facebook page.

42.    The U.S. Fourth Circuit Court of Appeals has ruled that the interactive portion of a public officials Facebook page is a "public forum," so elected officials cannot block people from it because of the position they hold.

43.    Defendant Truong has been repeatedly notified that his actions are in violation of the First Amendment.

44.    Defendant Truong continues to refuse to unblock residents.

45.    By blocking Plaintiffs, Defendant Truong has restricted their ability to speak in a public forum.

46.    And by blocking others, Defendant Truong has restricted Plaintiffs' ability to hear from other speakers in a public forum.

### *Mayor Truong targeted Wendy Dupont and Bogalusa Rebirth because Ms. Dupont expressed concerns with his conduct.*

47.    In addition to limiting access to the social media page, where critical city alerts and announcements are posted, Defendant Truong targeted Plaintiff Bogalusa Rebirth and its Board of Directors for further retaliation.

48.    From 2023 through present, Defendant Truong has made and disseminated false and malicious statements accusing Plaintiffs Wendy Dupont and Bogalusa Rebirth of misconduct, theft, and mismanagement of public resources, despite no evidence supporting such claims.

49.     In 2024, Defendant Truong encouraged or supported a so-called "Bogalusa Resistance Council," which targeted and publicly listed Plaintiffs on a "boycott list."

50.     In May 2024, Defendant Truong used his power as Mayor of Bogalusa to instruct employees that he directly supervised to thwart Plaintiff Bogalusa Rebirth's development projects.

51.     Also in May 2024, Defendant Truong personally ordered City staff to pursue revocation of Bogalusa Rebirth's valid building permits under the subject line "Request to Revoke 8 Building Permits - Rebirth."

52.     In June 2024, the City of Bogalusa, under Defendant Truong's direction, refused to accept payment for water and sewer connections, further delaying housing development schedules.

53.     Defendant Truong has restricted Bogalusa Rebirth's access to essential public services such as water and sewer connections for fully permitted development projects, as well as basic "Public Works" services.

54.     This conduct resulted in a civil lawsuit.

55.     On August 27, 2024, Judge Tara Zeller of the 22nd Judicial District Court ordered the City of Bogalusa to connect the above-mentioned services to eight (8) single-family properties.

56.     In 2025, Defendant Truong further defamed Bogalusa Rebirth and its contractor through false public social-media statements claiming that its homes were constructed with "subpar materials." Defendant Truong knew these statements were false and maliciously intended these statements discredit Plaintiff Bogalusa Rebirth publicly.

57.     Alternatively, Defendant Truong acted with a reckless disregard of the truth of his statements.

58.     Alternatively, Defendant Truong acted with at least negligence as to the truth of his statements.

## IV.    CAUSES OF ACTION

### *First Cause of Action* - Violation of the First Amendment

(Against Mayor Truong in his Individual and Official Capacities)

59.     The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. Amend I.  The First Amendment has applied to states and state actors by the Fourteenth Amendment and 42 U.S.C. § 1983.

60.     "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995).

61.     Ms. Dupont sought to exercise her fundamental constitutional right to express concerns at a public meeting regarding city officials handling of city affairs.

62.     Defendant Truong barred Ms. Dupont and others from accessing his public official Facebook page, so citizens critical of his conduct are unable to access the interactive portion of that page, which is a "public forum."

63.     Despite being informed that this conduct violates the First Amendment, Defendant Truong has refused to "unblock" Plaintiff Dupont and others.

64.     As a result, the Court should rule that Defendant Truong's actions violated Plaintiff's First Amendment rights.

65.     Defendant Truong's treatment of Ms. Dupont was intended to deter and chill her exercise of First Amendment Rights.

66.     As a direct and proximate result of Defendants' actions, Ms. Dupont's First

Amendment exercise was chilled.

67.    Mayor Truong's actions are attributable to the City because he is the chief policymaker.

### *Second Cause of Action* – First Amendment Retaliation

(Against Mayor Truong in his Individual and Official Capacities)

68.    "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions…for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (First Amendment prohibits "adverse governmental action taken against an individual in retaliation" for protected activities.)

69.    As a result, even some government actions that would be otherwise lawful become prohibited if in response to protected speech or petition. "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 688 (1996). The First Amendment thus bars officials' actions where they "caused [the speaker] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" and were "substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *See Keenan*, 290 F.3d at 258.

70.    Defendant Truong engaged in retaliation when he defamed Plaintiffs Wendy Dupont and Bogalusa Rebirth, attempted to revoke building permits, and unlawfully restricted access to public services.

71.    Mayor Truong's actions were intended to deter and chill Wendy Dupont's exercise

of her First Amendment right to express her opinion about the Mayor and his conduct.

72.    As a direct and proximate result of Mayor Truong's actions and decisions, he caused significant delay of Plaintiff Bogalusa Rebirth's fully permitted development projects and considerable expense and damages to Bogalusa Rebirth as well as to Ms. Dupont, and to the residents of the City of Bogalusa who benefit from the services provided by Bogalusa Rebirth.

73.    Mayor Truong's actions are attributable to the City because he is the chief policymaker.

### *Third Cause of Action* - Violation of the Louisiana Constitution
(Against Mayor Truong in his Individual and Official Capacities)

74.    Plaintiff incorporates the allegations in each preceding and following paragraph.

75.    Defendants' actions in defaming, targeting, and unlawfully restricting Plaintiffs' access to public services and forums, as described above, interfered with their exercise of fundamental rights as guaranteed by Article 1, §7 of Louisiana's Constitution.

76.    Mayor Truong's actions are attributable to the City because he is the chief policymaker and because of the doctrine of respondeat superior.

### *Fourth Cause of Action* – State Torts of Negligence and Negligent Infliction of Emotional Distress
(Against Mayor Truong in his Individual and Official Capacities)

77.    Under duty-risk analysis for determining liability, a plaintiff must prove (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached. *Stroik v. Ponseti*, 699 So.2d 1072, 1078 (La. 1997).

78.     Defendants' actions were the cause-in-fact of Ms. Dupont's injury and emotional distress, and the risk of injuring Ms. Dupont was within the scope of duty that was breached by Defendants' violation of Ms. Dupont constitutional rights.

79.     Public officials, such as mayors, owe thee public the duty of maintaining access to public forums and services.

80.     Defendant Truong assumed a particular duty to take care with regard to community housing initiatives for the City of Bogalusa.

81.     Defendant Truong breached the duty owed to Ms. Dupont, Bogalusa Rebirth, and to the public by attempting to revoke permits issued to Bogalusa Rebirth in retaliation for Ms. Dupont's exercise of her First Amendment Rights, and by unlawfully restricting access to public services and forums.

82.     Defendant Truong's conduct was extreme and outrageous.

83.     Defendant Truong knew or should have known that the emotional distress suffered by Ms. Dupont was severe and ongoing, as Ms. Dupont cares deeply about making housing and homeownership opportunities available to the Bogalusa community.

84.     Defendant Truong desired or acted with recklessness to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

85.     Defendants' decision to unlawfully restrict access to public services, which delayed housing development schedules, was substantially certain to and designed to cause harm to Plaintiffs Bogalusa Rebirth and Dupont.

86.     Defendants' actions were the cause-in-fact of Plaintiff Dupont's injuries.

87.    Mayor Truong's actions are attributable to the City because he is the chief policymaker and because of the doctrine of respondeat superior.

### *Fifth Cause of Action* – Defamation

(Against Mayor Truong in his Individual and Official Capacities)

88.    Emanating from La. C.C. art. 2315, defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Kennedy v. Sheriff of East Baton Rouge*, 05-1418, p. 25 (La. 7/10/06), 935 So.2d 669, 674; *Costello v. Hardy*, 03-1146 , p. 12. (La.1/21/04), 864 So.2d 129, 139.

89.    Four elements are necessary to establish a claim for defamation:(1) a false and defamatory statement concerning another;(2) an unprivileged publication to a third party;(3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Id.*; RESTATEMENT(SECOND) OF TORTS § 558 (1977).

90.    In order to prevail on a defamation claim, a plaintiff must prove 'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.'" *Id.* (quoting *Trentecosta v. Beck*, 96-2388, p. 10 (La. 10/21/97), 703 So.2d552, 559).

91.    Mayor Truong's actions are attributable to the City because he is the chief policymaker and because of the doctrine of respondeat superior.

## V.    RELIEF REQUESTED

92.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the complaint.

93.    Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

i.   Declaratory relief;

ii.   Injunctive relief, ordering Defendant Truong to unblock Plaintiffs and all persons and organizations he has blocked from the public official Facebook account;

iii.   Judgment against Defendants for Plaintiff's asserted causes of action;

iv.   Award of compensatory damages;

v.   Award of special damages and punitive damages;

vi.   Award costs and attorney's fees;

vii.   Interest;

viii.   Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

94.    Plaintiff states any and all other causes of action that may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this Court may seem equitable.

95.    Plaintiff reserves the right to notice of defect to this pleading and reserves the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

Respectfully Submitted:

**MOST & ASSOCIATES**

**HOPE PHELPS (La. Bar No. 37259)**
**WILLIAM MOST (La. Bar No. 36914)**
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170

Tel: 504.500.7974
Fax: 504.414.6400
Email: hopeaphelps@outlook.com

***Counsel for Wendy Dupont and Bogalusa Rebirth***